# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:14-cv-00218-MR

BARBARA WILSON, )
)
       Plaintiff, )
) **MEMORANDUM OF**
       vs. ) **DECISION AND ORDER**
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
       Defendant. )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 19].

## I. PROCEDURAL HISTORY

On December 27, 2011, the Plaintiff Barbara Wilson protectively filed applications for a period of disability and disability insurance benefits under Title II, and supplemental security income under Title XVI, alleging an onset date of September 10, 2010. [Transcript ("T.") 174-84]. The Plaintiff's claim was denied initially and on reconsideration. [T. 122-43]. Upon the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 28, 2013. At the hearing, the Plaintiff amended her alleged onset

date to March 31, 2011. [T. 49]. On December 17, 2013, the ALJ issued a decision denying the Plaintiff benefits. [T. 14-26]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

**II.    STANDARD OF REVIEW**

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.   THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1,

Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fourth step.

## IV.  THE ALJ'S DECISION

In denying the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through December June 30, 2016, and that she has not engaged in substantial gainful activity since the amended alleged onset date. [T. 19]. The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: history of breast cancer; history of foot fracture; major depressive disorder, recurrent, moderate; and generalized anxiety disorder. [T. 19-20]. The ALJ determined that none of Plaintiff's impairments, either

singly or in combination, met or equaled a listing. [T. 20-21]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 21-25], finding that the Plaintiff had the ability to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [F]requently climbing ramps or stairs, occasionally climbing ropes, ladders, or scaffolds; avoiding concentrated exposure to hazards, overhead reaching with the left overhead extremity; and mentally: limited to simple, unskilled jobs.

[T. 21]. Based on this RFC, the ALJ then determined that the Plaintiff could return to her past relevant work as a housekeeper. [T. 25-26]. Alternatively, the ALJ concluded that even if Plaintiff could not perform her past relevant work, there are other jobs existing in the national economy that she is able to perform, including the jobs of cashier and cafeteria attendant. [T. 26]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the amended alleged onset date through the date of his decision. [Id.].

## V. DISCUSSION[1]

Residual functional capacity (RFC) is an administrative assessment by the Commissioner of what a claimant can still do despite his or her physical

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

5

or mental limitations. SSR 96–8p, 1996 WL 374184, at *1 (Jul. 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c). In assessing a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those non-severe impairments, after considering all of the relevant evidence in the record. 20 C.F.R. § 404.1545(a). In determining a claimant's RFC, the ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1. The ALJ also must include a narrative discussion detailing how the evidence in the record supports the RFC assessment. Id., 1996 WL 374184, at *7.

Here, the ALJ summarily found, without performing a function-by-function analysis, that the Plaintiff could perform the standing, walking and lifting requirements of light work (that is, standing and walking for six hours out of an eight-hour workday and lifting 20 pounds). [T. 21]. He did not explain, however, why the Plaintiff was not credible regarding her limited ability to walk, stand and lift.[2] Further, the ALJ gave only a rote recitation of some of the medical evidence in the case [T. 22-23], without providing any

---

[2] The Plaintiff testified that since her foot surgery she could only be on her feet for 30-45 minutes with a cane before she had to lie down and rest due to pain. [T. 54-57]. She further testified that she could not lift more than eight pounds (e.g., a gallon of milk) ever since her surgery for breast cancer. [T. 56].

6

explanation as to why such evidence supports his conclusion that she was capable of the full range of walking and standing requirements for light work.

The Commissioner attempts to defend the ALJ's analysis regarding the Plaintiff's physical impairments by recounting the medical evidence summarized by the ALJ. The ALJ, however, failed to synthesize this evidence with his ultimate findings and conclusions. For example, the Commissioner argues that the ALJ noted the Plaintiff's "failure to follow prescribed treatment" and that this noncompliance "is an appropriate consideration in the evaluation of credibility." [Doc. 20 at 4]. While it is true that the ALJ, in summarizing the medical evidence of record, noted that the Plaintiff did not appear for an MRI and that she failed to appear for her appointment with Dr. Campbell [T. 22, 23], the ALJ did *not* cite the Plaintiff's alleged noncompliance with prescribed treatment as a basis for his credibility finding. The Court's review is limited to the reasons articulated by the ALJ. See Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must … affirm the ALJ's decision only upon the reasons he gave."); Rivers v. Astrue, No. 4:11-01386-TER, 2012 WL 2590498, at *5 (D.S.C. Jul. 5, 2012) ("[T]he ALJ, not the Commissioner, must explain why a treating physician's opinion is discounted or rejected. By the Commissioner setting forth the reasons, it is a post-hoc rationalization, which the Court cannot consider.").

The ALJ's RFC finding also conflicts with numerous references in the medical record to the significantly exacerbating effect that walking and standing has on the Plaintiff's chronic foot pain. The medical records reveal that the Plaintiff continued to experience pain in her left foot which was exacerbated by weightbearing activities, despite her September 2010 surgery. [T. 268-70, 480]. Bone imaging from December 2010 revealed that her healing process was complicated by a fracture and she had to be placed in an air cast for walking. [T. 477-79]. She continued to relay to her doctors that her pain was severely aggravated by walking. [T. 483]. In February of 2011, Plaintiff's surgeon, Dr. Costanzo, observed that her fifth metatarsal was abnormal and that she was suffering from an unstable ankle laterally with degenerative arthritis, capsulitis and stress fracture. [T. 487]. When she tried to switch over to a normal shoe in March of 2011, her pain was exacerbated. Dr. Costanzo then referred her to Dr. Waldman for further assessment. [T. 488]. Dr. Waldman's 2011 records also indicate that the Plaintiff's left foot pain was significantly exacerbated by weightbearing activities. [T. 490, 494, 496]. Her gait continued to be abnormal with guarding and hyperpronation and tendonitis, and metatarsalgia was assessed. [T. 491]. She underwent a series of injections with only minimal relief. [T. 494-97]. In March 2012, the Plaintiff presented to the emergency

room with worsening pain that was aggravated by walking. [T. 292-93]. She was back in the ER a few months later with complaints of worsening foot pain over the site of her prior surgery. Again, her pain was noted to increase with ambulation. [T. 399-400]. She was specifically instructed to rest, ice her foot and elevate it. [T. 401].

The Plaintiff continued to follow up with her primary doctor in 2013 for her foot and ankle pain on the left side [T. 515] and in September of 2013 (shortly before the ALJ hearing), she saw another specialist, Dr. Aaron Broyles. It was noted at that time that wearing shoes and walking on hard surfaces seemed to aggravate her chronic left foot pain and that she had already undergone injections and massage treatments in the past without significant relief. [T. 516]. She exhibited hyperpronation on stance and gait with no digital contractures. She had reduced range of motion in her left foot and focal pain on palpation to the dorsal lateral left foot along the lateral dorsal cutaneous nerve where her previous surgery and incisional scar were located. Dr. Broyles diagnosed neuralgia, neuritis and radiculitis consistent with the Plaintiff's testimony regarding aggravation of the nerve under her surgical site. A trigger point injection was administered to the dorsal lateral aspect of the left foot, and she was advised to ice the foot three times per day for ten minutes at a time and to wear temporary orthotics. [T. 517].

Despite numerous citations in the record regarding the Plaintiff's significant foot pain, which was exacerbated by standing and walking, the ALJ provided no reasoning for his conclusion that the Plaintiff's testimony was not credible regarding her walking and standing limitations. Because there is both objective and subjective evidence on file which contradicts the ALJ's RFC for six hours of standing and walking, the ALJ was required to provide a narrative discussion of how he arrived upon these functional assessments in the RFC instead of simply stating in a conclusory manner that she was capable of the standing and walking requirements of light work. "Remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).

Additionally, the ALJ found that the Plaintiff had moderate impairment in her ability to concentrate and persist at tasks as Dr. Miller noted that her ability to sustain attention to perform simple, repetitive tasks appeared to be moderately impaired. [T. 20-21]. In his RFC assessment, however, the ALJ only mentally limited the Plaintiff to the performance of simple, unskilled jobs. [T. 21]. The Fourth Circuit recently has held that "an ALJ does not account

'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Because "the ability to perform simple tasks differs from the ability *to stay on task*," Mascio, 708 F.3d at 638 (emphasis added), an RFC limited to simple, routine tasks or unskilled work fails to adequately account for moderate limitations in concentration, persistence, and pace.

As the Fourth Circuit noted in Mascio, it is possible that the ALJ can explain why the Plaintiff's moderate limitation in concentration, persistence, or pace does not translate into a limitation in RFC; however, "because the ALJ here gave no explanation, a remand is in order." Id.; see also Reinhardt v. Colvin, No. 3:14-cv-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.").

For all of these reasons, the Court concludes that a remand of this case is necessary.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 19] is **DENIED**, and the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge